IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN CUMMINGS, | ) |
| | ) |
|        Petitioner | ) |
| | ) |
| vs. | )   Case No. CIV-05-121-M |
| | ) |
| RON WARD, | ) |
| | ) |
|        Respondent | ) |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner appearing pro se, brings this action under 28 U.S.C. § 2241 seeking a writ of habeas corpus. Pursuant to an order by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response to the petition has been filed, and Petitioner has replied. Thus, the matter is at issue and ready for disposition.

Although Petitioner is not challenging his conviction, Respondent states that Petitioner is currently incarcerated at the William S. Key Correctional Facility pursuant to two separate convictions: possession of a controlled substance, Case No. CF-2000-30, District Court of Rogers County; and trafficking in illegal drugs, Case No. CF-2000-450, District Court of Tulsa County.[1] Response to Petition for Writ of Habeas Corpus, p. 1.

The incident forming the basis of this action arose while Petitioner was confined at the Cimarron Correctional Facility. He claims that he was denied due process under the Fourteenth Amendment when he was found guilty of individual disruptive behavior

---

[1]The case numbers were obtained from the Oklahoma Department of Corrections website, <http://docapp8.doc.state.ok.us/servlet/page?_pageid=394&_dad=portal30&_schema=PORTAL30&doc_num=261802&offender_book_id=152304&imageindex=1> (accessed April 21, 2005).

after a urine specimen he submitted tested positive for cannabinoid/THC. Petition, p. 3, 5. Petitioner received punishment in the form of 15 days disciplinary segregation and the loss of 180 earned/achievement credits.  Response, Ex. 1 (Disciplinary Hearing Report, Part IV). Respondent concedes that Petitioner has exhausted his state court remedies with regard to this disciplinary proceeding.  Response, p. 1 (citing Gamble v. Calbone, 375 F.3d 1021 (10th Cir. 2004)).

Petitioner challenges the results of the disciplinary proceeding because he claims that the urinalysis was not conducted in accordance with Oklahoma Department of Corrections (DOC) policy, and that the chain of custody over the sample was not maintained. Petition, p. 5. In particular, he claims that DOC regulation DOC-OP-060125 requires that two staff witnesses prepare incident reports of their observations of the test and the results.  Petition, p. 2, 5 and Offender's Misconduct Appeal Form dated June 7, 2004 (included in exhibits to Petition herein).  He also claims that the disciplinary hearing officer relied upon inadmissible evidence because there were two "separate and distinguishing ... urinalaysis [sic] testing, but the Chain of Custody for Drug Analysis only reflected one specimen."  Petition, p. 3, 5.  Finally, although it is not clear if the same is being urged as either a "stand alone" claim, or as support for Petitioner's claim that he has no other available remedies, Petitioner also claims that he was deprived of his final appeal of the misconduct offense because the facility where he was incarcerated at that time mishandled the appeal form.  Petition, p. 3-5.

Respondent contends that the drug testing procedure used in Petitioner's case was sufficiently reliable to meet the requirements of due process in the context of a prison

disciplinary proceeding. Respondent contends that the DOC regulation requiring two witnesses does not apply to the type of drug test at issue here, Response, p. 7, and that only one specimen was collected and analyzed – maintaining a proper chain of custody. Response, p. 6-7. Although Respondent argues that Petitioner's final appeal from the misconduct offense was properly denied as untimely, he agrees with Petitioner that the matter is exhausted and "that the record is fully developed such that this Court can review" Petitioner's claims on the merits. Response, p. 9.

In Oklahoma, state law creates a liberty interest in earned credits. See Okla. Stat. tit. 57, § 138(A); see also Waldon v. Evans, 861 P.2d 311, 313 (Okla. Crim. App. 1993) ("the State has created a liberty interest in earned credits"). As a result, inmates who earn sentence credits are entitled to due process protection before such credits may be taken away. Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (inmate's liberty interest in earned credits cannot be denied without the minimal safeguards afforded by the Fourteenth Amendment's Due Process Clause). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To meet the due process standard in an institutional disciplinary proceeding, an inmate must receive (1) advance written notice of the disciplinary charge; (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454 (1985). If these requirements are met, and there is "some evidence" to support the

decision, then procedural due process has been provided. Id. The decision can be upheld even if there is only "meager" evidence supporting the decision. Id. at 457; Mitchell, 80 F.3d at 1445.

Evidence offered by Respondent shows that Petitioner had adequate notice of the conduct with which he was accused, an opportunity to present evidence, and a written statement of the evidence relied upon and the reasons for the disciplinary action. Response, Ex. 1. Thus, the procedural requirements set forth by Hill, 472 U.S. at 454, have been met. Nonetheless, Petitioner questions whether the results of the drug test were reliable evidence, and whether the DOC's alleged failure to follow its own regulations satisfies due process. With regard to the latter contention, it should be noted that "a failure to adhere to administrative regulations does not equate to a constitutional violation," and thus the relevant inquiry is not whether the procedures complied with the requirements of prison regulations. Malik v. Kindt, No. 95-6057, 1996 WL 41828,*2 (10th Cir. Feb. 2, 1996) (quoting Hovater v. Robinson, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993)).[2] Rather, as set out above, this Court's review of Petitioner's disciplinary proceeding is "limited to whether the three steps mandated by Wolff were followed and whether there was some evidence to support the disciplinary [hearing officer's] findings." Mitchell, 80 F.3d at 1445. See also Sandin v. Conner, 515 U.S. 472, 481 (1995) (noting generally that prison regulations do not confer protected liberty interests in the enforcement of those regulations); Kirkland v. Provience, No. 94-6245, 1995 WL 377088, *7 (10th Cir. Feb. 2, 1995)(finding Department of Corrections' regulations governing disciplinary proceedings

---

[2]This and any other unpublished disposition are cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

4

do not generally create liberty interest in strict enforcement of those rules and failure to comply with such regulations is not a violation of due process). Thus, even if DOC failed to strictly follow its own regulation here, due process was nonetheless provided. Moreover, it appears that there was no failure to comply with the regulation. As quoted by Respondent, DOC-OP-060125 only requires incident reports by two staff members when "the test kit is such that no photocopy can be made of the results of the urinalysis...." Response, p. 4.  Here, an outside laboratory provided written results of the urinalysis to the DOC, which could be photocopied.

Proceeding to Petitioner's claim regarding the reliability of the drug analysis, the undersigned finds Petitioner's claim regarding the chain of custody to be unsubstantiated. Petitioner has submitted a document showing that upon collection, his specimen was numbered 257931821. Petition, Ex. A.  The initial laboratory report, dated April 7, 2004, shows a positive result for Cannabinoid, using the EMIT method. Petition, Ex. C.  This report bears the same number (identified on this report as a "barcode" number) of 257931821. Id. The second laboratory report, dated April 15, 2004, shows "Re-Analysis of COC# 257931821," and reports a positive result for THC, using the GCMS method. Petition, Ex. D.  Although the "barcode" number on this second report is different, the report also bears the *same nine-digit number* that appeared on Petitioner's specimen at the time it was collected.  Moreover, the "Specimen ID2" is the same on both reports: 261802.[3] Petition, Exs. C and D.

---

[3] "Specimen ID1" is "Cummings, Kevin" on both reports.  Petition, Exs. C and D.

By questioning the differing "barcode" numbers on the two reports, Petitioner is in effect asking the Court to reweigh the evidence, but such an evaluation is not a constitutional requirement. Hill, 472 U.S. at 455-456 ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). Moreover, courts considering drug testing in the prison setting have not imposed a chain of custody requirement in order to satisfy the "some evidence" constitutional standard. Thompson v. Owens, 889 F.2d 500, 502 (3rd Cir. 1989) ("[p]ositive urinalysis results based on samples that officials claim to be appellant's constitute some evidence . . . . A chain of custody requirement would be nothing more or less than an 'independent assessment' into the reliability of the evidence, and Hill tells us, explicitly, that such a 'credibility' determination is not required . . . ."); Webb v. Anderson, 224 F.3d 649, 652-53 (7th Cir. 2000) (although filling in gaps in chain of custody would enhance reliability of test results, Constitution requires only some evidence, not evidence that logically precludes any conclusion but the one reached by the disciplinary board).

Finally, to the extent Petitioner is raising the denial of his appeal from his misconduct offense as a separate due process violation, his claim must fail. Lowe v. Sockey, No. 00-7109, 2002 WL 491731, at *7 (10th Cir. Apr. 2, 2002) (holding that the Fourteenth Amendment's Due Process Clause does not entitle an inmate to an appeal from a finding of guilt at a disciplinary hearing).

Accordingly, because Petitioner was afforded the procedures required by the Constitution and the disciplinary sanctions imposed upon him were supported by some evidence, the petition should be denied.

### **RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file objections to this Report and Recommendation with the Clerk of this Court by May 12, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 22nd day of April, 2005.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE